IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1879, IN THE
SIXTY-THIRD YEAR OF THE STATE.

———————

## LANGSDALE *v.* GEISENDORFF.

CONVEYANCE.—*Reservation of Dam, Race, Water-Power and Right of Way.*
—*Subsequent Conveyance of Mill Privileges.*—*Abandonment of.*—*Easement.*
—*Parties.*—On the death of the owner in fee-simple of certain lands, across
which flowed a creek which, by means of a dam across it, supplied a mill-
race with water used in propelling a mill, all situated on said lands and
belonging to such land-owner, a commissioner of court, in a suit to parti-
tion such lands, sold and conveyed to A., and A. sold and conveyed to B.,
that part of such lands on which were situated said creek and dam and the
upper part of the mill-race ; "Reserving, however, expressly, the
right to the water, dam and mill-race now upon said premises, as the same
exist, and the right of way  *  to pass and repass on both sides of said
race, and along and around said dam on either side of " said " creek * , as
may be needed for the purpose of repairing, rebuilding or examining the
same or either of them * ;" and A. " purchased said land subject to rights of
way for a race now running through the same." Said commissioner af-
terward sold and conveyed to C., who sold and conveyed to D., who sold
and conveyed to E., a part of such lands below that conveyed
to B., and embracing the mill and the lower part of the mill-race,
" With all the mills, houses, structures and improvements thereon, the
right of water by which said mill is propelled, and right of way to improve

\* the race in which said water is conveyed (said right of way, when added to said race, to be limited to forty feet in width, taken together, on all lands through which said race now passes, not sold to C.  \*  ), the right to, and use and benefit of, the dam from which said race issues and is supplied, and the further right of way  \*  along " said " creek, to said dam, for the purpose of making repairs upon and around the same.  Said water-power mentioned being considered as that running within said race, from the dam aforesaid."

B. sued E., alleging that the latter, to supply certain ice-ponds on lands of third persons with water, had suffered the latter to construct a dam in said race ; had run his mill by steam, instead of water, during the ice season ; had increased the height of the dam and increased the capacity  of the mill-race, and changed the use of the water from milling purposes to that of supplying such ice-ponds ; and that he had thereby caused pools of water to stand on and in the vicinity of the plaintiff's premises.  Prayer that E.'s easement be declared forfeited.

*Held*, that all the rights reserved in the deeds to A. and B. were not conveyed to C., D. or E.

*Held*, also, that, though E.'s acts be wrongful, B. can not maintain an action to declare the easement forfeited.

From the Marion Superior Court.

*B. K. Elliott, A. C. Ayres, E. A. Brown, J. W. Gordon, R. N. Lamb* and *S. M. Shepard*, for appellant.

*N. B. Taylor, F. Rand* and *E. Taylor*, for appellee.

BIDDLE, J.—We take the following statement of the case, which is not controverted by the appellee, from the brief of appellant :

"About the year A. D. 1843, Nathaniel West died seized of a large body of land near the city of Indianapolis.   On one of these tracts was a flouring mill, built about the year 1832, propelled by water-power from a dam across Fall Creek.   The water was conveyed from the dam to the mill by a race about one-half mile in length.

" Subsequently, the lands were sold in separate parcels, by virtue of a decree of the Marion Circuit Court, rendered in a suit instituted by certain of the legatees of West for a division of the estate and payment of the encumbrances.

" That portion of the land, on which the dam and upper portion of the race were situate, was sold by the commissioner appointed by the court, one William Robson, to George W. Pitts, the grantor of the appellant. This sale was made June 1st, 1853, and reported by him to the court, which was approved and deed made July 26th, 1853.

" The tract on which the mill was situated was sold by said commissioner, July 21st, 1853, which was reported to the court, and afterwards confirmed and deed executed, to Charles and Shapley, through whom the appellee claims title.

" The deed to Pitts contained the following reservation in favor of the mill property, afterwards sold to Charles and Shapley, to wit: ' Reserving, however, expressly, the right to the water, dam and mill-race now upon said premises, as the same exist, and the right of way at all times to pass and repass on both sides of said race, and along and around said dam on either side of Fall Creek from the Michigan road, as may be needed for the purpose of repairing, rebuilding, or examining the same, or either of them, * * and purchased said land subject to rights of way for a race now running through the same.'

" The deed to Charles and Shapley, after describing the land, says : ' With all the mills, houses, structures and improvements thereon, the right of water by which said mill is propelled, and right of way to improve, from time to time, as may be needed, the race in which said water is conveyed (said right of way, when added to said race, to be limited to forty (40) feet in width, taken together, on all lands through which said race now passes, not sold to said Charles and Shapley), the right to, and use and benefit of, the dam from which said race issues and is supplied, and the further right of way, to and from the Michigan road, along Fall Creek, to said dam, for the purpose of making

repairs upon and around the same. Said water-power mentioned being considered as that running within said race, from the dam aforesaid.'

" Shapley sold to Charles, and Charles sold, January 18th, 1865, to Brett, Braden & McIntire, the mill, with a tract containing 36 and 70-100 acres, with the mill privilege described as above, except that the race was limited to forty feet in width on all lands except those conveyed. Brett, Braden & McIntire afterwards, on the 30th of December, 1865, sold a portion of the land purchased of Charles to Joseph Butsch, but retained the mill and mill privileges, and afterwards, on June 6th, 1866, made the contract to furnish him with water from the race for an ice-pond on the land formerly purchased as aforesaid from them.

" Afterwards, on December 14th, 1869, Brett, Braden & McIntire conveyed to the appellee and brother the mill, by boundaries particularly specified and embracing seven acres of land, with the same stipulations as to right of water and race as in the deed from Robson to Charles and Shapley, except that the race was to be confined to forty feet in width, on all lands except those conveyed to appellee.

" After the purchase of the mill and water rights, as above described, by Geisendorff, the appellee, he entered into contracts with other parties to furnish them water from the race to fill their ice-ponds. All of the ponds were below the line of the appellant's premises, but were on no part of the seven acres sold to Geisendorff with the mill and mill privileges, and part of them were not on any part of the tract originally sold to Charles and Shapley, but the Butsch pond was on a part of that tract which he had purchased of Brett, Braden & McIntire as aforesaid. To supply all these ponds with water, and to keep the water level in the ponds, a dam about three feet high was placed by the owners of the ponds, with Geisendorff's

consent, in the race, at a point below the appellant's lands, but above the appellee's, which so interfered with the running of the mill at those seasons with water that it was then run by steam.

"Langsdale, the appellant, brought suit in the Superior Court of Marion county, against the appellee, charging the facts above set forth, and, in addition, that the appellee had increased the height of the dam and increased the capacity of the race, and entirely changed the use of the race from that of milling purposes to that of furnishing water for those ice-ponds, and so obstructed said race with a dam that it wholly diverted the water from the mill, and used more water than was required for the mill, and more than he had a right to, and backed water upon his land to his injury, and caused stagnant pools of water to stand in the vicinity of his farm; and claiming that, by changing its use and diverting it from the mill, appellee had abandoned and forfeited his rights in the dam and race, and praying that he might be adjudged to have abandoned the easement so claimed by him in the dam and mill-race, and that he be enjoined from setting up any claim or interest in the lands of appellant, and for damages for injuries suffered.

"A general denial was filed to the whole complaint, and, to so much as charged the appellee with increasing the height of the dam, he answered that the same was done by the leave and license of the appellant.

"There was a trial at special term by the court, and finding for the defendant, and plaintiff's motion for a new trial overruled, which finding and judgment, on appeal to general term, was affirmed, from which judgment this appeal is taken.

"At the trial, the plaintiff, Langsdale, after the introduction of the various deeds showing the title of the plaintiff and also of the defendant, offered to show that the width

of the race on his lands had been increased, and was wider than the same existed at the time it was sold to his grant- or, Pitts, and wider than Geisendorff, under the terms of his deed, was entitled to maintain it on his, appellant's, land; but the court refused to admit the evidence, to which the appellant at the time excepted.

" The appellant also offered to show that the dam in the race had the effect to and did flow the water into the ponds on land not owned by appellee, nor belonging to the mill tract owned by him, which evidence the court excluded, and to which appellant reserved his exception.

" Appellant also offered to show that the dam in the race wholly obstructed the flow of the water to the mill, and was put in to turn the water into the ponds, to be convert- ed into ice, which evidence the court excluded.

" Appellant also offered to prove the use, and how the dam and race existed at the time of the sale of land to Pitts, which the court excluded.

" Appellant also offered in evidence the record referred to in the deeds of Robson, Com'r, to Pitts, and to Charles and Shapley, and of the cause in which said order of sale, report, etc., were made, all of which was excluded.

" Appellant also offered to introduce in evidence the contracts made by the appellee with various persons for furnishing them water from the race for their ice-ponds, which was excluded by the court.

" The appellant submits for the judgment of this court the following propositions and the questions involved :

" 1st.   That, as Langsdale is the owner in fee-simple of the land on which the dam and upper part of the race are situate, no matter how broad or large an easement thereto may have been reserved, he is entitled to maintain his ac- tion against every one except the person who holds the easement, and against him if he exceed the right actually granted to him.

" 2d. That the grant to Geisendorff, and to Charles and Shapley, his grantors, of the right of water by which the mill was propelled, under the terms of his deed, is a grant of *water-power*, and not of the *corpus* of the water. That is, the right to use the impetus or momentum of the water, to propel machinery, but not to confine it in reservoirs, to be manufactured into ice, and that its use as a water-power was all that was contemplated at the time of the original grant.

" 3d. That the right of water or easement in the land of appellant was granted and reserved to appellee as appurtenant or appendant to the mill property, as the dominant estate, and that it can not be severed from it and attached to or used for the benefit of other tracts or estates.

" 4th. That when it is once severed from the dominant estate it is gone forever.

" 5th. That under the reservation in the deed to Pitts, even if the appellee is the owner and entitled to the full benefit of it, he can not maintain the race wider or in a different manner than the same then existed.

" 6th. That, by the terms of his own deed, the appellee was to limit his race to forty feet in width on all land not owned by him, and that, consequently, he had no right to spread it out over a number of large ponds on land not owned by him."

The finding of the court against the appellant, as to that part of the complaint which avers that the appellee raised the dam in Fall Creek above its original height, upon the answer of license, is not complained of in the brief of the appellant; we therefore dismiss that branch of the case at once, without further notice.

The appellant's counsel have expended much research to show us the distinction between a grant of water and a grant of water-power; and that, by a grant of water-power, the water itself—the *corpus*—does not pass; but

we do not perceive the application of such a distinction to
the case we are considering. The right of the appellant
depends upon the construction of the deed from Robson
to Pitts, under which, through Pitts and Burkhart, the
appellant holds. The case seems to have been brought and
tried, and treated throughout the proceedings, as if all
that was reserved in the deed from Robson to Pitts was
subsequently conveyed by Robson to Charles and Shap-
ley, from whom, indirectly, the appellee holds; but this
does not appear to us to be the case. Indeed, the case ap-
pears to have been decided upon the construction of the
deed from Robson to Charles and Shapley, instead of
upon the construction of the deed from Robson to Pitts.
If the deed from Robson to Pitts does not convey what
the appellant claims, he can not maintain the action, even
if the appellee was a wrongdoer as against other per-
sons. In the premises of the deed from Robson to Pitts,
it is recited that Pitts "purchased said lands subject to
rights of way for a race now running through the same, and
right to a certain dam now on said land, with full priv-
ilege of passing and repassing along said race, and along
and around said dam, and to and from the same, for all
purposes of repair, rebuilding and examination, as herein-
after particularly reserved." In the habendum of
the deed what is thus "particularly reserved" in
the premises is described as follows : "Reserving, however,
expressly, the right to the water, dam and mill-race now
upon said premises, as the same exist, and the right of
way at all times to pass and repass on both sides of said
race, and along and around said dam, on either side of
Fall Creek, from the Michigan road, as may be needed for
the purpose of repairing, rebuilding or examining the
same, or either of them ; to have and hold," etc.

The deed from Robson to Charles and Shapley conveys a
different tract of land from that conveyed to Pitts. The

tract conveyed to Charles and Shapley lies south of and adjoining the tract conveyed to Pitts, and the race in controversy runs down through both tracts, and returns the water passing through it into Fall Creek below. In the habendum of the deed from Robson to Charles and Shapley, after describing the land, the following rights are conveyed : "With all the mills, houses, structures and improvements thereon, the right of water by which said mill is propelled, and right of way to improve, from time to time, as may be necessary, the race in which said water is conveyed (said right of way, when added to said race, to be limited to forty feet in width, taken together, on all land through which said race now passes, not sold heretofore to said Charles and Shapley), the right to, and use and benefit of, the dam from which said race issues and is supplied, and the further right of way, to and from the Michigan road, along Fall Creek, to said dam, for the purpose of making repairs upon and around the same. Said water-power mentioned to be taken and considered as that running within said race, from the dam aforesaid ; and the said Robson reserving a right of way along so much of the eastern line of the land hereby deeded to Charles and Shapley, as borders upon the Central Canal, for the purpose of passing to and from contiguous lands belonging to or sold from the estate aforesaid. To have," etc.

It thus plainly appears that the interests reserved in the land conveyed to Pitts are very different from those conveyed in the same land to Charles and Shapley. In the deed to Pitts no purpose whatever is mentioned to which the water is to be applied, whether to hydraulic uses or to fill ice-ponds ; no interest or right in the water is conveyed to Pitts, either in its momentum or *corpus ;* it is simply reserved from him, without restriction in quantity or purpose, together with the right to keep up the dam and race.

No right in the water having been conveyed to Pitts, of course he could convey none, either directly or indirectly, to the appellant. But, admitting that the appellant has all the rights of a riparian owner in the water as it passes over his land, either through the channel of Fall Creek or along the mill-race, yet that would not give him any right to the water after it had passed from and below his land, upon the premises of the appellee. We can see no ground upon which the appellant is entitled to recover.

Under this view of the case, it is scarcely necessary to examine the rulings of the court in rejecting certain evidence; for, if our views are right, it is very clear that the evidence was properly rejected. Admitting, however, that the record offered was necessary to support the deed to Pitts, if his title, under it, which has been conveyed to the appellant, had been disputed, yet, after the deed was admitted, and the appellant's possession under it had been shown, he had all the title the deed conveyed, as against any thing set up in the evidence for the defence; indeed, it is not disputed by the appellant, either in his evidence or brief, but that the appellant had all the title in his premises that was conveyed by the deed from Robson to Pitts; and the record offered was not competent to enlarge, or in any way affect, the legal construction of the deed.

The judgment is affirmed, at the costs of the appellant.

Petition for a rehearing overruled.